In order to qualify as a "sworn officer" of a municipal police force, police chiefs or supervisors must meet the age, physical, fitness and training standards required by law.
Hon. Richard J. Condon Commissioner Division of Criminal Justice Services
This responds to your request for an opinion as to whether, and under what circumstances, municipal police commissioners and police chiefs may be registered and classified as police officers; what police officer powers these administrators possess; whether they have the authority to possess and carry firearms without a license; and what steps local governments must take to give their police executives these powers.
New York's statutes contain several different definitions of the term "police officer". The definition of police officer in the Criminal Procedure Law contains seventeen different categories. Among these are the definitions for various municipal police officers:
 "(c) A sworn officer of an authorized county or county parkway police department;
 (d) A sworn officer of an authorized police department or force of a city, town, village or police district" (Criminal Procedure Law, § 1.20[34]).
The definition of police officer found in the Criminal Procedure Law is significant because it is used as a referent by other statutes describing the duties and powers of police officers. For example, section 265.20
of the Penal Law exempts "[p]olice officers as defined in subdivision thirty-four of section 1.20 of the criminal procedure law" from the criminal sanctions for handgun possession (Penal Law, §265.20[a][1][a]). Thus, these "sworn officers" may possess firearms without licenses. They also have the power to execute arrest and search warrants (Criminal Procedure Law, §§ 120.10, 690.25); make arrests without a warrant (id., § 140.15); issue appearance tickets (id.,
§ 150.20); and, if necessary, use physical or deadly force in making an arrest (Penal Law, § 35.30). Your question is whether local police chiefs and commissioners are sworn officers under the Criminal Procedure Law definition, thereby possessing these law enforcement powers.
Article 35 of the Executive Law (§§ 835-846) creates the Municipal Police Training Council (MPTC) and contains its own definition of police officer. The MPTC studies and approves height, weight, physical fitness and training requirements for municipal police officers. Its powers under section 840 of the Executive Law include the following:
 "The council may recommend to the governor rules and regulations with respect to:
* * *
 "(b) Minimum courses of study, attendance requirements, and equipment and facilities to be required at approved municipal police training schools;
* * *
 "(d) The requirements of minimum basic training which police officers appointed to probationary terms shall complete before being eligible for permanent appointment, and the time within which such basic training must be completed following such appointment to a probationary term;
 "(e) The requirements of minimum basic training which police officers not appointed for probationary terms but appointed on other than a permanent basis shall complete in order to be eligible for continued employment or permanent appointment, and the time within which such basic training must be completed following such appointment on a non-permanent basis;" (Executive Law, § 840[1]).
Training requirements have been established by the MPTC under this authorization (9 NYCRR §§ 6020.2[b], 6020.4[a]). The MPTC also has responsibility for prescribing the training curriculum (ibid.).
For purposes of the MPTC, police officer is defined in the following way:
 "a member of a police force or other organization of a municipality who is responsible for the prevention and detection of crime and the enforcement of the general criminal laws of the state, but shall not include any person serving as such solely by virtue of his occupying any other office or position, nor shall such term include a sheriff, under-sheriff, commissioner of police, deputy or assistant commissioner of police, chief of police, deputy or assistant chief of police or any person having an equivalent title who is appointed or employed by a municipality to exercise equivalent supervisory authority." (Executive Law, § 835[7]; see also, 9 NYCRR § 6020.1[f].)
Thus, municipal police chiefs and commissioners clearly need not meet the minimum training requirements.
In addition, section 58 of the Civil Service Law, which requires that police officers meet certain age and education requirements, and section 209-q of the General Municipal Law, which subjects municipal police officers to the municipal police training program, each define police officer:
 "As used in this section, the term `police officer' means a member of the capital police force or a police force, police department, or other organization of a county, city, town, village, housing authority or police district, who is responsible for the prevention and detection of crime and the enforcement of the general criminal laws of the state, but shall not include any person serving as such solely by virtue of his occupying any other office or position, nor shall such term include a sheriff, under-sheriff, commissioner of police, deputy or assistant commissioner of police, chief of police, deputy or assistant chief of police or any person having an equivalent title who is appointed or employed to exercise equivalent supervisory authority." (Civil Service Law, § 58[3] [General Municipal Law, § 209-q is essentially the same].)
This definition limits police officer status to those who are actively engaged in crime detection and prevention, such as patrolmen, and excludes those in supervisory positions, such as police chiefs and commissioners. Therefore, supervisory officials of municipal police departments are exempt from the age, height, weight, physical fitness and training requirements imposed by law.
In addition to establishing training requirements, article 35 of the Executive Law also requires the MPTC to maintain a central registry of all police and peace officers in the State (Executive Law, §§ 845,845-a). The central State registry was established in 1979 (L 1979, ch 482). Memoranda included in the bill jacket indicate that the purpose of the registry is to keep track of all those officers authorized to carry handguns:
 "In its original form, [*] the registry proposal included all `peace officers' as defined by the Criminal Procedure Law — i.e., all those authorized to carry firearms without a permit." (L 1979, ch 482, Legislative Bill Jacket, Budget Report on Departmental Legislation, Criminal Justice Services, Proposal #1, S. 4923, June 20, 1979.)
* * *
 "Three years ago, Commissioner Frank J. Rogers, in a report to the Governor concerning police handguns and the use of deadly physical force, recommended that a central registry of all the peace officers in the State be established and maintained on a current basis." (L 1979, ch 482, Legislative Bill Jacket, Memorandum re: S. 4923 from Robert M. Schlanger to Richard Brown.)
Unlike other provisions of the Executive Law dealing with police training requirements, the registry utilizes the "sworn officer" definition of police officer found in the Criminal Procedure Law (id., § 835[7-a]; Criminal Procedure Law, § 1.20[34]). It appears that because the registry was established to identify police officers possessing weapons, the definition utilized by the handgun statute was deemed appropriate.
Thus, the definitions of police officers found in Civil Service Law, § 58(3), Executive Law, § 835, and General Municipal Law, §209-q all specifically exclude municipal police chiefs and commissioners. It is clear that the Legislasture, in drafting these definitions, intended to exempt police supervisors from the age, height, weight, physical fitness and training requirements. This enables individuals skilled as administrators to serve as civilian heads and supervisors of police departments. Also, police officers advancing through the ranks who can no longer meet the age, physical fitness or other requirements can continue to serve the police department and the public in supervisory capacities.
You question whether these municipal police chiefs and commissioners are "sworn officers" under the Criminal Procedure Law definition, thereby entitled to possess firearms without licensure and exercise the extensive law enforcement powers of police officers.
We do not believe that it was the Legislature's intent that supervisors, untrained and unqualified as police officers, carry weapons without licensure and exercise the law enforcement powers of police officers. Obviously, the required training, physical, fitness and other requirements for police officers are to ensure that their important public safety functions are performed responsibly. Through the exemptions in the Civil Service Law, Executive Law and General Municipal Law, we believe the Legislature intended to permit skilled administrators to hold supervisory posts in municipal police departments, even though they may be ineligible or have not qualified for status as police officers. There is no indication of an intent that these civilian administrators automatically qualify for "sworn officer" status. We do not believe the public interest would be served by permitting untrained and unqualified persons to carry weapons and exercise law enforcement powers. Therefore, there is no basis for inferring such an intent.
This does not mean, however, that police supervisors cannot qualify as "sworn officers". Police supervisors who wish to enjoy "sworn officer" status can do so if they meet the age, physical, fitness, training and other requirements. Chiefs and commissioners who have risen from the ranks can seek to retain the "sworn officer" status they previously obtained by continuing to meet legal requirements. Civilian appointees can seek to obtain "sworn officer" status by meeting these requirements.
It should be noted that nothing in the statutes or this opinion would prevent a police chief or commissioner from applying for a handgun permit under section 400.00(2) of the Penal Law.
Accordingly, in order to qualify as a "sworn officer" of a municipal police force, police chiefs or supervisors must meet the age, physical, fitness and training standards required by law.
* In 1979, the proposal was modified and a registry was established only for police officers (L 1979, ch 482). The following year, a separate registry was established for peace officers (Executive Law, §845-a).